Dear Dr. Casama:
We are in receipt of your request for an Attorney General's Opinion regarding your duties in admitting a mentally ill person by an emergency certificate. We will summarize the factual statements in your request letter for clarification of this opinion.
Recently, a new psychiatric unit at Washington — St. Tammany Regional Medical Center was opened which admits patients from different parishes. As Coroner of Washington Parish, you see all patients admitted under a Physicians' Emergency Commitment ("P.E.C.") written by physicians and psychiatrists from all over the state, including Washington Parish, within 72 hours. Therefore, as coroner you complete a Coroner's Emergency Certificate ("C.E.C.") and bill the specific parish. If a patient is admitted to a treatment facility that is not within your jurisdiction, you write a P.E.C. or an Order for Protective Custody ("O.P.C."), and do not write a C.E.C. because R.S. 28:53
specifically states that such a certificate has to be completed after the admission to a treatment facility by the coroner of the parish where the treatment facility is located.
In an effort to save costs, the St. Tammany Police Jury has requested that the St. Tammany Coroner start writing C.E.C.'s for patients to be taken to the Acute Care Psychiatric Unit of Washington Center, even before the patient has been admitted to the facility. It is the jury's contention that there is no need for the coroner of the parish of the treating facility to write an additional C.E.C. on the patient. Specifically, you have questioned whether or not, as coroner of the Parish of Washington, you are legally obligated to write an additional C.E.C. on a patient, after the patient has been admitted to a facility located in Washington Parish.
LSA-R.S. 28:53 states in pertinent part:
 (B)(1) Any physician or psychologist may execute an emergency certificate only after an actual examination of a person alleged to be mentally ill or suffering from substance abuse . . . Failure to conduct an examination prior to the execution of the certificate will be evidence of gross negligence.
* * *
 (G)(1) Upon admission of any person by emergency certificate to a treatment facility, the director of the treatment facility shall immediately notify the coroner of the parish in which the treatment facility is located of the admission, . . .
 (2) Within seventy-two hours of admission, the person shall be independently examined by the coroner or his deputy who shall execute an emergency certificate, pursuant to Subsection B, which shall be a necessary precondition to the person's continued confinement.
 (3) However, in the event that the coroner has made the initial examination and executed the first emergency commitment certificate then a second examination shall be made within the seventy two hour period set forth in this Part by any physician at the treatment facility where the person is confined.
 (4) In making either the initial examination or the second examination, when the coroner or his deputy examines the person and executes an emergency certificate and a reexamination of the person and reexecution of a certificate is necessary for any reason to insure the validity of the certificate, both the first examiner and the reexaminer shall be entitled to the fee for the service, unless they are one and the same.
* * *
 (6) When a person is confined in a treatment's facility other than a state mental institution, the examining coroner in the parish where the patient is confined shall be entitled to the usual fee paid for this service to the coroner of the parish in which the patient is domiciled or residing. When a person is confined in a state mental institution in a parish other than his parish of domicile or residence, the examining coroner shall be entitled to the fee authorized by law in his parish for the service. In either case, the fee shall be paid and accurate records of such payments kept. . . (Emphasis added).
It is our opinion that LSA-R.S. 28:53 clearly sets forth and mandates that a person admitted to a treating facility for mental illness or substance abuse shall be independently examined within seventy-two hours by the coroner or his deputy of the parish in which the treatment facility is located, and the coroner or deputy shall execute an emergency certificate in accordance with law; provided however, the coroner has not made the initial examination, and executed the first emergency commitment certificate. Where the language of a statute is clear and unambiguous, it must be interpreted as written. LSA-C.C. Art. 9; Hayden v. Richland Parish School Board,554 So.2d 164 (La.App. 2 Cir. 1989), writ den. 559 So.2d 124.
It is our opinion that the coroner is entitled to the fee for the service of either the initial examination or the second examination, whichever is performed. Therefore, we do not find any authority for the St. Tammany Parish Police Jury to (1) request that the Coroner of Washington Parish refrain from writing a C.E.C. for a patient admitted to a treating facility in Washington Parish, nor (2) refuse to pay for such services, if the patient is a domiciliary of St. Tammany Parish, and is treated at a facility in Washington Parish.
We hope that this opinion addressed all of your concerns in this matter; however, if we can be of further assistance, please do not hesitate to contact our office.
Yours very truly,
 RICHARD P. IEYOUB Attorney General
BY: ANGIE ROGERS LaPLACE Assistant Attorney General RPI/ARP:pb/0227s cc: St. Tammany Parish Coroner St. Tammany Parish Police Jury